RECEIVED

OCT 1 8 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| Robert J Welzel, *et ux*, | ) |
| Plaintiffs, | ) Case No: 1:06-cv-00838 (RBW) |
| v. | ) |
| UNITED STATES (Government), | ) **AMENDED MOTION FOR RELIEF** |
| | ) **FROM ORDER OF DISMISSAL** |
| Defendant. | ) **UNDER FED.R.CIV.P. 60(b)(3), (6)** |
| | ) |

Plaintiff seeks relief from the Order of March 30, 2007, dismissing the above-captioned action on the basis that said Order was obtained by means specified in Fed.R.Civ.P 60(b)(3) and (6).

Fed.R.Civ.P 60(b) states:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ***(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; *** or (6) any other reason justifying relief from the operation of the judgment.

Plaintiff asserts that defendant, by and with the active assistance of counsel, perpetrated a fraud upon the Court, through misrepresentation of fact, law, and legal precedent to obtain the said Order. This motion is supported by the questions, alternative questions, and supplemental questions presented herein, and discussed more fully in Plaintiff's MEMORANDUM IN SUPPORT OF MOTION FOR RELIEF

FROM ORDER OF DISMISSAL UNDER FED.R.CIV.P. 60(b)(3), (6), (hereinafter, "Relief Memo") and by the Exhibits incorporated therein.

## QUESTION PRESENTED

Did defendant, with the active assistance of counsel, misrepresent the regulation cited as a substantive rule--or a "legislative-type rule," i.e., one "affecting individual rights and obligations"?

## DISCUSSION

As discussed more fully in Plaintiff's RELIEF MEMO, "26 CFR 301.7433-1" nothing more than an "interpretative regulation" under the standards established by Chrysler v. Brown, *supra*, Morton v. Ruiz, *supra*, by the Office of the Federal Register publishing the Code of Federal Regulations[1] and by the Treasury Department in TREASURY DIRECTIVE 28-01 and TREASURY DIRECTIVE 25-03.

## SUPPLEMENTAL QUESTION PRESENTED

Are "general allegations", in the context of the Fed.R.Civ.P 8(a) "notice Pleadings" Rule, as interpreted in *Conley v. Gibson*, 355 U.S. 41, and reiterated in *Jones v Bock*, __ U.S. _____, (Decided: January 22, 2007) (purportedly made by a multitude of Plaintiffs), sufficient to establish a presumption of a pattern of unlawful activity?

## DISCUSSION

Defendant, by and with the assistance of counsel, raised the issue that the

---

[1]("...[T]he codification of the general and permanent rules published in the Federal Register by the executive departments and agencies of the Federal Government". SEE 1 CFR 2.5(b); 1 CFR 8.1).

allegations in the instant case are similar, if not identical, to dozens of other cases filed to this Court. Plaintiff, concerned only with the instant case, asserts that any alleged similarity of allegations in other cases is irrelevant in respect of the instant case, and draws the Court's attention to the fact that the alleged redundancy of such "general allegations", especially in the numbers asserted by defense counsel, strongly indicates a pattern of unlawful activity on the part of defendant's agency. Acts generally complained of in the Verified Complaint in the instant case arguably include, or necessarily lead, if true, to the requisite two (2) acts listed in 18 U.S.C. § 1961(1), such as 1) extortion, in forcing Plaintiff to make financial "arrangements" to avoid attack on property, and acts indictable under Title 18, United States Code: §§ 1028, 1341, 1343, 1344, 1503, 1510, 1511, 1512, 1513, and 1951, if committed by any other person, 18 U.S.C. § 1961(3) or enterprise 18 U.S.C. § 1961(4).

## QUESTION PRESENTED

Was counsel's "refund suit" construction - in the absence of a venue assertion - a willful mischaracterization intended to mislead the Court?

## DISCUSSION

Plaintiff contends that defendant should be estopped from "converting" the damages claim (clearly intended) into a refund claim (clearly unintended) in the absence of a venue challenge. Further, Plaintiff asserts that the omission of a venue challenge indicates defendant's awareness of the misconstruction. Absent a venue challenge, defendant's Motion to Dismiss on "refund" grounds was little more than a dilatory tactic, intended to mislead the Court, through prejudice, into a dismissal on any

grounds.

## QUESTION PRESENTED

Was defendant's Anti-Injunction Act challenge frivolous, in the face of allegations meeting at least 3 of the AIA's 14 statutory exceptions?

## DISCUSSION

The Anti-Injunction Act contains 14 specific exceptions to its prohibition:

Except as provided in sections 6015(e), 6212(a) and (c), 6213(a), 6225(b), 6246(b), 6330(e)(1), 6331(i), 6672(c), 6694(c), 7426(a) and (b)(1), 7429(b), and 7436, no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

As discussed more fully in Plaintiff's AMENDED MEMO, Plaintiff specifically alleged that defendant failed to provide Notice of Deficiency in accordance with IRC § 6212; that defendant failed to afford Plaintiff a meaningful Collection Due Process in accordance with IRC 6230/6330; CDP hearings under 6320 (liens) are to be conducted under 6330; failure to provide Notice of Deficiency in accordance with IRC § 6212, and failure to hold 6330(e) are statutory exceptions to the AIA.

Based upon the foregoing, Plaintiff respectfully seeks relief from the Order of March 30, 2007, dismissing the above-captioned action.

Respectfully Submitted

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| Robert J Welzel, *et ux*, | ) |
| | ) Case No: 1:06-cv-00838 (RBW) |
| Plaintiffs, | ) |
| v. | ) **AMENDED MEMORANDUM IN** |
| | ) **SUPPORT OF MOTION FOR** |
| UNITED STATES (Government), | ) **RELIEF FROM ORDER OF** |
| | ) **DISMISSAL UNDER FED.R.CIV.P.** |
| Defendant. | ) **60(b)(3), (6)** |
| | ) |

Plaintiff seeks relief from the Order of March 30, 2007, dismissing the above-captioned action on the basis that said Order was obtained by means specified in Fed.R.Civ.P 60(b)(3) and (6).

Fed.R.Civ.P 60(b) states:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ***(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; *** or (6) any other reason justifying relief from the operation of the judgment.

Plaintiff asserts in the Motion that defendant, by and with the active assistance of counsel, perpetrated a fraud upon the Court, through misrepresentation of fact, law, and legal precedent, to obtain the said Order. This motion is supported by the questions, alternative questions, and supplemental questions presented in the Motion supported by this MEMORANDUM IN SUPPORT OF MOTION FOR RELIEF FROM

ORDER OF DISMISSAL UNDER FED.R.CIV.P. 60(b)(3), (6), (hereinafter, "Motion") and the Exhibits incorporated herein.

## QUESTION PRESENTED

Did the Court misconstrue defendant's assertion that Plaintiffs "failed to demonstrate" exhaustion, MEMORANDUM IN SUPPORT, p. 5, as "failure to exhaust" ?

## DISCUSSION

As a matter of record, a major pillar of the motion to dismiss was that Plaintiff "...failed to *demonstrate* that they filed an administrative claim...", MEMORANDUM IN SUPPORT, p. 5, which the Court construed as "because they failed to exhaust". ORDER, p. 4. The distinction is important, because a recent United States Supreme Court decision "demonstrates" that defendant's ground of "...failed to *demonstrate*..." is no basis for dismissal, and that "...failed to exhaust..." is an affirmative defense.

In *Jones v Bock,* 549 U.S. __, 127 S. Ct. 910 (2007), the Honorable Roberts, C.J., opined that:

> "Failure to exhaust is better viewed as an affirmative defense. Federal Rule of Civil Procedure 8(a) requires simply a 'short and plain statement of the claim' in a complaint..."

and that,

> "The fact that the [statute at issue]...is silent on the issue whether exhaustion must be pleaded or is an affirmative defense, is strong evidence that the usual practice should be followed, and the practice under the Federal Rules is to regard exhaustion as an affirmative defense..."

The *Jones* Court also reiterated:

> "Courts should generally not depart from the Federal Rules' usual practice based on perceived policy concerns. See, e.g., Leatherman v. Tarrant County Narcotics

>Intelligence and Coordination Unit, 507 U. S. 163,"[1]

and,

>"Given that the [statute at issue] does not itself require plaintiffs to plead exhaustion, such a result 'must be obtained by amending the Federal Rules, and not by judicial interpretation.' Leatherman, supra, at 168. Pp. 10-16."

Plaintiff asserts that the Verified Complaint met the "notice pleading" requirements set forth in Fed.R.Civ.P. 8(a), as interpreted in Conley v. Gibson, 355 U.S. 41[2], and reiterated in Jones v. Bock, 549 U.S. __, 127 S. Ct. 910 (January, 2007), in that 7433 "does not itself require plaintiffs to plead exhaustion", Jones v Bock, citing Leatherman, supra, at 168; and, although another Court in ths District has found that

>"...Jones also specifically notes that '[w]hether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract.' Id. at 921. Thus,'[a] complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense . . . appears on its face.' Id. (quoting Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001)); see also Thompson v. Drug Enforcement Admin., 492 F.3d 428, 438 (D.C. Cir. 2007) ("Even when failure to exhaust is treated as an affirmative defense, it may be invoked in a Rule 12(b)(6) motion if the complaint somehow reveals the exhaustion defense on its face." (citing Jones, 127 S. Ct. at 921)",

this Court noted, in its March 30, 2007 ORDER (granting vacation of Entry of Default) that

>"[t]he movant is not required to prove a defense, but only to assert a defense that it may prove at trial." Whelan v. Abell, 48 F.3d 1247, 1259 (D.C. Cir. 1995);

---

[1] Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U. S. 163 Held: A federal court may not apply a "heightened pleading standard" -- more stringent than the usual pleading requirements of Federal Rule of Civil Procedure 8(a)

[2] "(b) Failure of the complaint to set forth specific facts to support its general allegations of discrimination was not a sufficient [355 U.S. 42] ground for dismissal of the suit, since the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." Pp. 47-48.

see also Keegel, 627 F.2d at 374 (stating that "[l]ikelihood of success is not the measure. Defendants' allegations are meritorious if they contain 'even a hint of a suggestion' which, *proven at trial*, would constitute a complete defense.") (citation omitted)".

ORDER, p. 3 (emphases added).

The Supreme Court's change in the interpretation of the nonjurisdictional exhaustion requirement establishes that Plaintiffs were not required to "demonstrate that they filed an administrative claim for damages" as counsel asserted at pp 3, 4 of her memorandum in support of dismissal; to the contrary, "an affirmative defense... may be invoked in a Rule 12(b)(6) motion if the complaint somehow reveals the exhaustion defense on its face." (citing Jones, 127 S. Ct. at 921)", but, as this Court noted, "only to assert a defense that it may prove at trial." Whelan v. Abell, 48 F.3d 1247, 1259 (D.C. Cir. 1995).

Lastly upon the subject, defendant could not seriously assert prejudice by the jury's trial of the factual element of *substantive* administrative remedies, since the jury could, upon examination of all relevant facts, find that *available remedies* were not, in fact, exhausted, and Fed.R.Civ.P 12(h)(2) allows a Motion to Dismiss for "failure to state a claim" any time prior to judgment, to wit:

> "A defense of failure to state a claim upon which relief can be granted...may be made in any pleading permitted or ordered under Rule 7(a)[3], or by motion for judgment on the pleadings, <u>or at the trial on the merits</u>." Fed.R.Civ.P 12(h)(2) (emphasis added)

---

[3] "Pleadings permitted" are limited to "complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint is served. <u>No other pleading shall be allowed</u>, except that the court may order a reply to an answer or a third-party answer." (Emphasis added)

## QUESTION PRESENTED

Did defendant, with the active assistance of counsel, misrepresent the nature and applicability of the regulation cited as the basis for defendant's challenges to the instant action?

## SUPPLEMENTAL QUESTION PRESENTED

Did defendant, with the active assistance of counsel, misrepresent the regulation cited as a substantive rule--or a "legislative-type rule," i.e., one "affecting individual rights and obligations"?

## DISCUSSION

TBOR I (1988) expressly withheld jurisdiction in the absence of a prior exhaustion of administrative remedies. TBOR II, Public Law 104-168, 110 Stat. 1465 (1996) specifically removed that prior exhaustion requirement, providing instead for mitigation of damages in the absence of exhaustion. Further review of Official documents published by the Office of the Federal Register establish that defendant's assertion that "TBOR III...reinstated, verbatim, the language of TBOR I", is irrelevant, because the regulation cited by the defendant as a procedural bar to this action lacks the "certain substantive characteristics" and "certain procedural requisites" *Chrysler v. Brown*, 441 U.S. 281, at 301, required of "a substantive rule--or a 'legislative-type rule,'" Id., 302, citing *Morton v. Ruiz*, 415 U.S. 199, at 236. These Office of the Federal Register documents establish that neither the Secretary of the Treasury nor any authorized delegate promulgated <u>any</u> *substantive regulation* (see footnote 4, below),

i.e., a regulation "affecting individual rights and obligations" *Morton v. Ruiz*, 415 U.S. 199, at 232, which made "administrative remedies available" (<u>IRC § 7433</u>) under any incarnation of Internal Revenue Code section 7433.

As the Honorable Rehnquist, J., stated in *Chrysler v. Brown*, 441 U.S. at 301, 302,

> "In order for a regulation to have the "force and effect of law," it must have certain substantive characteristics and be the product of certain procedural requisites. The central distinction among agency regulations ... is that between "substantive rules" on the one hand and "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice" on the other. *** But in Morton v. Ruiz, 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974), we **1718 noted a characteristic inherent in the concept of a "substantive rule." We described a substantive rule--or a "legislative-type rule," id., at 236, 94 S.Ct., at 1074-as one "affecting individual rights and obligations." Id., at 232, 94 S.Ct., at 1073. This characteristic is an important touchstone for distinguishing those rules that maybe "binding" or have the "force of law." Id., at 235, 236,94 S.Ct., at 1074."[4]

The "certain procedural requisites" to which the *Chrysler* Court referred include, in the instant matter, the procedural requirements of TREASURY DIRECTIVE: 28-01, and TREASURY DIRECTIVE 25-03, discussed hereinthroughout, as appropriate.

The *Chrysler* Court continued, at 303:

> "Likewise, the promulgation of these regulations must conform with any procedural requirements imposed by Congress. Morton v. Ruiz, supra, at

---

[4]Within the above analysis, footnote 31 included the commentary:
> "In contrast [the Attorney General's Manual] suggests that "interpretive rules" and "general statements of policy" do not have the force and effect of law. Interpretive rules are issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." Ibid. General statements of policy are "statements issued by an agency to advise the public prospectively of the manner in which the agency proposes to exercise a discretionary power."

> 232. For *agency discretion is limited not only by substantive, statutory grants of authority, but also by the procedural requirements which "assure fairness and mature consideration of rules of general application."* NLRB v. Wyman-Gordon Co., 394 U.S. 759, 764 (1969)." (Emphasis added)

TREASURY DIRECTIVE: 28-01, by express terms, "establishes procedures that govern the issuance of regulations" Ibid., ¶ 1, and mandates that "issuance of regulations, the review of existing regulations, and the publication of regulatory agendas and programs are governed by the Administrative Procedure Act," among other Acts.Ibid., ¶ 2. TREASURY DIRECTIVE: 28-01 even establishes "Special Procedures for the Internal Revenue Service", at Part I, ¶ 4(b).

TREASURY DIRECTIVE 25-03 "states the responsibilities and procedures for submitting Department of the Treasury documents to the Office of the Federal Register in accordance with Title 1 of the Code of Federal Regulations (CFR) Chapter 1." Ibid. ¶ 1, and establishes conclusively that regulations submitted to the Office of the Federal Register for publication must comply with Title 1 of the Code of Federal Regulations. TREASURY DIRECTIVE 25-03 also reaffirms that every document submitted must comply with TREASURY DIRECTIVE 28-01. TREASURY DIRECTIVE 25-03, ¶ 4(a)(2).

"[T.D. 8392, 57 FR 3536, Jan. 30, 1992; 57 FR 5931, Feb. 18, 1992, as amended by T.D. 9050, 68 FR 14320, Mar. 25, 2003]"[5] failed to comply with the procedural requirements of TREASURY DIRECTIVE 28-01 and TREASURY DIRECTIVE 25-03, to wit:.

---

[5] This series of Treasury Decisions purporting to "promulgate" and "amend" 26 CFR 301.7433 is quoted directly from, Treasury Decision 9050, 68 FR 14320 including the brackets.

Each of the Treasury Decisions identified lacks the "complete citation of the authority under which the section is issued" required by Title 1 C.F.R. § 21.40, "including-(a) General or specific authority delegated by statute; and (b) Executive delegations, if any, necessary to link the statutory authority to the issuing agency". The information required by Title 1 C.F.R. § 21.40 is among the Agency Responsibilities published in Title 1 C.F.R. § 21.41.

The published "26 CFR 301.7433-1" contains neither a citation to 102 Stat. 3747 (TBOR I), nor to 110 Stat. 1465 (TBOR II), nor to 112 Stat. 730 (TBOR III), *aka* IRC § 7433, in its three (3) incarnations, as the source of authority, as required by the Office of the Federal Register in its administration of the Federal Register Act, at Title 1 C.F.R. § 21.43(a), and Title 1 C.F.R. § CFR 21.52; nor does it contain a citation to any substantive authority, as exemplified in Title 1 C.F.R. § CFR 21.45, and Title 1 C.F.R. § CFR 21.53.

"26 CFR 301.7433-1", in every instance, failed to comply with the procedural requirements established in TREASURY DIRECTIVE 25-03[6].

Based upon the standard established by *Chrysler v. Brown, supra, Morton v. Ruiz, supra*, and by the Office of the Federal Register publishing the Code of Federal Regulations[7] in its administration of the Federal Register Act, as those standards have

---

[6] Failure to comply with Treasury Directive 28-01 is discussed in greater detail below.

[7] ("...[T]he codification of the general and permanent rules published in the Federal Register by the executive departments and agencies of the Federal Government". SEE 1 CFR 2.5(b); 1 CFR 8.1).

been recognized by the Treasury Department in TREASURY DIRECTIVE 28-01 and TREASURY DIRECTIVE 25-03, "26 CFR 301.7433-1" is nothing more than an "interpretative regulation" not "affecting individual rights and obligations".

In discussing the distinction between "substantive" and "interpretative (interpretive)" regulations, the *Chrysler* Court pointed out, at 441 U.S. 315, that the regulation at issue therein established, *inter alia*:

> " 'As the changes made by this document relate solely to interpretive rules, general statements of policy, and to rules of agency procedure and practice, neither notice of proposed rule making nor public participation therein is required by 5 U.S.C. 553. Since the changes made by this document either relieve restrictions or are interpretative rules, no delay in effective date is required by 5 [441 U.S. 315] U.S.C. 553(d). These rules shall therefore be effective immediately.' "

*Chrysler* found, "Thus, the regulations were essentially treated as interpretative rules, and interested parties were not afforded the notice of proposed rulemaking required for substantive rules under 5 U.S.C. § 553(b)."

TREASURY DIRECTIVE 28-01 establishes that "[T.D. 8392, 57 FR 3536, Jan. 30, 1992; 57 FR 5931, Feb. 18, 1992, as amended by T.D. 9050, 68 FR 14320, Mar. 25, 2003]", *aka* "26 CFR 301.7433-1" had to meet the procedural requirements of the Administrative Procedure Act, as well as those of Title 1, Code of Federal Regulations. TREASURY DIRECTIVE 28-01 applies, by express terms, to:

> (1) any advance notice of proposed rulemaking, notice of proposed rulemaking (proposed regulation), temporary (interim) regulation, final regulation or Treasury Decision published in the Federal Register;
> (2) any other publicly-issued document of general applicability and future effect <u>designed to implement, interpret, or prescribe law or policy,</u> or describing the

procedure or practice requirements of an office or bureau;
(3) any document that withdraws or substantively amends a previously issued regulation;
(4) <u>any document published in the Notice section of the Federal Register that:
(a) requires or authorizes any action on the part of any person to participate in a program, avoid a penalty, or obtain a benefit;
(b) contains a reporting or recordkeeping requirement</u>;

Defendant has forcefully asserted that "26 CFR 301.7433-1" was "<u>designed to implement, interpret, or prescribe law or policy</u>," and "<u>requires...any action on the part of any person...to participate in a program, avoid a penalty, or obtain a benefit</u>" as described in TREASURY DIRECTIVE 28-01. Defendant's forceful assertion establishes that the Treasury Directive is applicable to the regulation cited.

The regulation (sic) is its own best evidence of failure to comply with the Administrative Procedure Act, as mandated by TREASURY DIRECTIVE 28-01. The published "26 CFR 301.7433-1", containing only the bracketed reference "[T.D. 8392, 57 FR 3536, Jan. 30, 1992; 57 FR 5931, Feb. 18, 1992, as amended by T.D. 9050, 68 FR 14320, Mar. 25, 2003]", contains the statement, in part, that:

> "It also has been determined that section 553(b) of the Administrative Procedure Act (5 U.S.C. chapter 5) does not apply to these regulations..."[8]

---

[8] Section 4 of the Administrative Procedure Act, at 5 U.S.C. § 553(b), provides for ONLY two exceptions to the requirement that "General notice of proposed rule making shall be published in the Federal Register":
" * * * * *
"Except when notice or hearing is required by statute, this subsection does not apply --
"        (A) to *interpretative rules, general statements of policy*, or *rules of agency organization, procedure, or practice*; or
"        (B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest."

TREASURY DIRECTIVE 28-01, unarguably applicable, allows exemption from 5 U.S.C. § 553 only in cases of emergency or statutory or judicial deadlines, and requires that any regulation asserting such "shall contain a specific statement explaining, and a citation to the provisions of 5 U.S.C. 553 that authorize, such action." TREASURY DIRECTIVE 28-01, Part VI, ¶¶ 1, 2. "[T.D. 8392, 57 FR 3536, Jan. 30, 1992; 57 FR 5931, Feb. 18, 1992, as amended by T.D. 9050, 68 FR 14320, Mar. 25, 2003]", aka "26 CFR 301.7433-1" failed to comply with these procedural requirements of TREASURY DIRECTIVE 28-01.

In the similar situation, the Supreme Court followed the precedent it had set 2 years previously:

> "As we observed in Batterton v. Francis, 432 U.S. 416, 425 n. 9, 97 S.Ct. 2399, 2405 n. 9, 53 L.Ed.2d 448 (1977):
>> "[A] court is not required to give effect to an interpretative regulation. Varying degrees of deference are accorded to administrative interpretations, based on such factors as the timing and consistency of the agency's position, and the nature of its expertise." [9]
>
> "We need not decide whether these regulations are properly characterized as "interpretative rules." It is enough that such regulations are not properly promulgated as substantive rules, and therefore not the product of procedures which Congress prescribed as necessary prerequisites to giving a regulation the binding effect of law."

*Chrysler*, at 441 U.S. 315.

In the clear absence of an incorporated "finding and a brief statement of reasons therefor" as specified in 5 USC § 553(b)(3)(B), and in the clear absence of "a specific

---

[9] The Court is respectfully reminded that defendant's agency failed to even attempt to promulgate a regulation for four years after the right to bring an action was granted by Congress.

statement explaining, and a citation to the provisions of 5 U.S.C. 553 that authorize, such action" as required by TREASURY DIRECTIVE 28-01, Part VI, ¶¶ 1, 2, the assertion that "section 553(b) of the Administrative Procedure Act...does not apply...", the Treasury Decisions purporting to promulgate "26 CFR 301.7433-1" are their own best evidence that it is merely "an interpretative regulation" *Chrysler*, 441 U.S. 281 at 315; *Batterton v. Francis*, 432 U.S. 416, 425 n. 9, not "affecting individual rights and obligations" *Morton v. Ruiz*, 415 U.S. at 232, that "[A] court is not required to give effect to" *Batterton v. Francis, supra*.

Based upon the foregoing, the Court should follow the Supreme Court's prudent example, and find that "26 CFR 301.7433-1" fails to "affect individual rights and obligations" *Morton v. Ruiz*, , notwithstanding the clear Congressional intent that "administrative remedies [be made] available"; that it is nothing more than an "interpretative regulation", *Chrysler v. Brown*, 441 U.S. 281 (1979), i.e., a regulation not "affecting individual rights and obligations" *Morton v. Ruiz*, 415 U.S. at 232; that the "court is not required to give effect to" *Batterton v. Francis*, 432 U.S. 416, 425 n. 9; and that "26 CFR 301.7433-1" lacks substantive authority.

## QUESTION PRESENTED

Did defendant, by and with the active assistance of counsel, misrepresent the nature of the case?

## SUPPLEMENTAL QUESTION PRESENTED

Was counsel's "refund suit" construction a willful mischaracterization intended to mislead the Court?

## DISCUSSION

Plaintiff understands that in seeking, as a part of the remedy, return of amounts unlawfully collected without assessment, Plaintiff inadvertently clouded the issues in the above-captioned action. But defendant and counsel attacked the prayer for relief rather than answer the substantive allegations in the body of my Verified Complaint.

Defendant and counsel knew that Plaintiff sought no refund in the action. Plaintiff sought only a determination as to whether officers or employees of defendant's agent disregarded provisions of the Internal Revenue Code or regulations promulgated thereunder *in connection with* collection activity. Specifically, Plaintiff's allegations included, but were not limited to, officers or employees of defendant's agent acting, *in connection with* collection activity, in the absence of valid, properly executed Certificates of Assessment; of engaging in "exaction...in the guise of a tax." See: *Enochs V. Williams Packing Co.*, 370 U.S. 1 (1962).

The prayer for relief, anticipating that the Court would find that unauthorized actions — including actions taken in the absence of valid, properly executed Certificates of Assessment — in fact occurred, further anticipated that statutory tort damages as authorized by Congress could and would then be determined, and that replevin[10] of any

---

[10] Replevin lies to recover goods which are seized under a void process . Smith v Huntington, 3 NH 76; Denton v Flinchum (Okla) 285 P2d 395 . or judgment. Iron Cliffs Co. v Lahais, 52 Mich 394, 18 NW 121. While a process valid on its face is a protection to an officer against personal liability, it affords no justification or defense in replevin unless it is based on a valid and legal judgment or other prerequisite paper or proceedings. Adams v Hubbard, 30 Mich 104; Power v Kindschi, 58 Wis 539, 17 NW 689  The rule that an execution fair on its face protects the officer See Sheriffs, Police, and Constables (1st ed _ 199). is a rule of protection and cannot be used as a means of attack for offensive purposes and to deprive the rightful owner of his property. Therefore, in an action of replevin, either by the officer or by the owner of the goods, the rule is that the officer, in justifying, must show a valid judgment as the foundation of the action or defense, and that an execution is not sufficient evidence of the officer's right to make the

Case 1:06-cv-00838-RBW    Document 16-2    Filed 10/18/2007    Page 18 of 20

"exaction...in the guise of a tax" *Enochs*, would make Plaintiff whole.

Neither statutory tort damages nor replevin of property taken under void process are, in any sense, a "refund"[11].

Defendant and counsel instead attacked the prayer for relief rather than answer the substantive allegations contained in the body of my Verified Complaint, knowing that such mischaracterization, brought long after the time allotted to answer, and after the Clerk's proper entry of default, provided the sole basis for asserting lack of service

## QUESTION PRESENTED

Was counsel's assertion with respect to the Anti-Injunction Act (AIA) a fraud upon the Court?

## DISCUSSION

Counsel asserted (and the Court accepted the assertion) that the AIA prohibits the Court from enjoining defendant's agents/agency from *further* disregarding statute(s) and regulation(s) in exercising delegated authority. As noted by by the Honorable Colleen Koller-Kotelly in *Larue v. United States*, (DDC 06-61),

The Anti-Injunction Act provides, in relevant part:

Except as provided in sections 6015(e), 6212(a) and (c), 6213(a), 6225(b),

---

levy and to hold the goods. Hoover v Jones, 84 Neb 662, 121 NW 975; Cockrell v Schmitt, 20 Okla 207, 94 P 521. Also, the right of a person whose property has been wrongfully seized on execution to recover the property in an action of replevin is generally recognized. Emerson v Hopper, 94 Ark 384, 127 SW 467; Hines v Stahl, 79 Kan 88, 99 P 273; Bruen v Ogden, 11 NJL 370.

[11] Alternatively, a finding that no provisions of the Internal Revenue Code or regulations promulgated thereunder were disregarded would allow "refund" to become the justiciable issue, and the proper venue for such "refund" action could then have been determined.

Robert Welzel, *et ux* v. United States    Page 14 of 16    AMENDED MEMORANDUM IN SUPPORT OF MOTION FOR RELIEF FROM ORDER OF DISMISSAL UNDER FED.R.CIV.P. 60(b)

6246(b), 6330(e)(1), 6331(i), 6672(c), 6694(c), 7426(a) and (b)(1), 7429(b), and 7436, no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

26 U.S.C. § 7421(a).

*Larue* also reiterated that the Anti-Injunction Act "could scarcely be more explicit" (quoting Bob Jones Univ. v. Simon, 416 U.S. 725, 736, 94 S. Ct. 2038, 40 L. Ed. 2d 496 (1974)).

Plaintiff specifically alleged in the Verified Complaint that defendant failed to provide Notice of Deficiency in accordance with IRC § 6212, arguably "within the rubric of 26 U.S.C. § 6212(a), which states:

> "If the Secretary determines that there is a deficiency in respect of any tax imposed by subtitles A or B or chapter 41, 42, 43, or 44, he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail. Such notice shall include a notice to the taxpayer of the taxpayer's right to contact a local office of the taxpayer advocate and the location and phone number of the appropriate office."

*Larue v. United States*, (DDC 06-61).

Plaintiff specifically alleged in the Verified Complaint that defendant failed to give notice of the last day for filing for redetermination of such phantom deficiency in accordance with IRC § 6213, arguably "within the rubric" (*Larue*) of 26 U.S.C. § 6213(a). Section 6213(a) provides that "[n]otwithstanding the provisions of section 7421(a), the making of such assessment or the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court[.]" 26 U.S.C. § 6213(a).

Plaintiff specifically alleged in the Verified Complaint that defendant failed to

afford Plaintiff a meaningful Collection Due Process in accordance with IRC 6230/6330.

At least three of the Anti-Injunction Act's exceptions apply to allegations contained in my Verified Complaint.

Plaintiff contends that defendant's Anti-Injunction Act argument, in the face of clear statutory exceptions to the operation of the AIA, was a fraud perpetrated upon the Court; arguably rising to the level of obstruction of justice.

Based upon the foregoing, Plaintiff respectfully seeks relief from Order of March 30, 2007, dismissing the above-captioned action.

Respectfully Submitted

Dated __16 October__, 2007

_____
Robert Welzel

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the forgoing on:

Pat S Genis
U.S. Dept of Justice
P.O. Box 227
Washington D.C. 20044

Dated __16 October__, 2007

_____
Robert Welzel